**MISSOURI MINING, INC., Appellant,**

v.

**ST. JOSEPH LIGHT & POWER COMPANY, Respondent.**

**No. WD 36636.**

Missouri Court of Appeals,
Western District.

Dec. 31, 1985.

George P. Coughlin, Kansas City, for appellant.

Joseph K. Houts, St. Joseph, for respondent.

Before CLARK, C.J., and KENNEDY and BERREY, JJ.

KENNEDY, Judge.

We have before us the appeal of Missouri Mining, Inc., from a circuit court judgment confirming an award made by an arbitrator in a contract dispute between Missouri Mining and St. Joseph Light and Power Company.

We affirm the judgment of the trial court.

The contract between the parties was a contract for the supply of coal by Missouri Mining to the Power Company. It provided for Missouri Mining to furnish 4,290,000 tons of coal over a term beginning November 1, 1975 and ending March 23, 1992, but providing an option to terminate the contract on March 23, 1985 if the parties were unable to agree on an "adjusted base price".

The contract contemplated the production of the coal from the Mining Company's "Bluebell Mine" in Putnam County, Missouri and Appanoose County, Iowa, from a coal formation known as the Lexington coal seam. The contract allowed coal deliveries from other sources, but such coal was

required to meet certain standards set out in the contract. The coal was graded according to a number of characteristics, including sulfur content.

The difficulties which culminated in the present litigation began in mid-1977, when the mining company began to deliver coal from the Bevier-Wheeler Seam in Randolph and Howard Counties, Missouri. This coal, according to the arbitrator's finding, consistently fell below contract standards for sulfur content. Finally in 1979 the Power Company refused to take any more coal from that source. It never declined to accept coal from the "basic source", i.e., from the Bluebell mine, but apparently, for reasons the record does not disclose, the Mining Company insisted upon continuing to supply coal from the Randolph and Howard Counties mines. The Mining Company commenced a suit for damages against the Power Company for breach of contract in the Circuit Court of Putnam County. We issued our writ of prohibition to stay those proceedings till arbitration was completed. *See State ex rel. St. Joseph Light & Power Company v. Donelson*, 631 S.W.2d 887 (Mo.App.1982). The parties proceeded to arbitration and the decision of the arbitrator is under review upon this appeal. The decision of the arbitrator, which was accompanied by a thorough analysis of the evidence (to be adverted to later) was as follows:

> On all the Findings recited above, it is decided and ruled:
>
> 1) That there was failure of contract performance by Missouri Mining, in its delivery of alternate source coal which was significantly below contract specifications.
>
> 2) That the aforesaid failure of performance justified the action of the Power Company in its rejection of future shipments from the Randolph and Howard counties location.
>
> 3) That the failure of contract performance by Missouri Mining, in association with its wrongful insistence on utilization of inapplicable quality specifications, constituted breach of the contract which

substantially impaired the value of the whole contract.

> 4) That the Missouri Mining claim for damages is therefore denied and the contract is terminated.
>
> 5) That the Power Company failed to sufficiently establish basis or grounds for an award of damages in either of the respects alleged, and, therefore, its claims for damages are each and both denied.

## I

Mining Company first says that the trial court had no jurisdiction to confirm the arbitrator's award. This contention it bases upon the alleged failure of the Power Company to give to it the 15 days' notice of the filing of the arbitrator's award and its motion to confirm the same, as required by § 435.090 (repealed 1984). We assume for present purposes, but without so deciding, that said § 435.090 was applicable to this proceeding.

Power Company points out that the motion to confirm was filed in the proceeding which had already been initiated by Mining Company's motion to vacate. The arbitrator's award had been filed in court by the Mining Company and, of course, both the Power Company and the Mining Company were before the court and subject to its jurisdiction. It says that the 15 days' notice of filing its motion to confirm was not required. We do not rule that question, however. We find that the 15 days' notice requirement, if applicable, was waived by the Mining Company.

■ No objection was raised in the trial court at any time to the court's proceeding upon the motion to confirm. The Mining Company has waited until its brief in this court to raise the point. Not having raised it in the trial court, and having proceeded without objection, Mining Company will be held to have waived the 15 days' notice requirement. *Morrow v. Caloric Appliance Corp.*, 372 S.W.2d 41 (Mo. banc 1963); 72 C.J.S. *Process* § 113b (1951). *Rucker v. Thrower*, 559 S.W.2d 40 (Mo.App.1977);

We hold that the trial court had jurisdiction to enter its order confirming the award.

## II

The Mining Company contends that the arbitrator exceeded his powers in that he based his award upon a finding of excessive sulfur dioxide emission levels when the coal was burned at the Power Company's power plant. The Mining Company quite correctly points out that the contract does not provide any minimum sulfur dioxide emission standards for coal supplied under the contract. If the decision of the arbitrator was indeed based upon excessive sulfur dioxide emissions, the award would have been in excess of his powers. Both under the common law, under Missouri's law as it existed prior to Missouri's adoption of the Uniform Arbitration Act, § 435.090, RSMo 1978 (repealed 1984), under the Uniform Arbitration Act, § 435.350–.470, RSMo Supp.1984, and under the Federal Arbitration Act, 9 U.S.C.A. §§ 1–14 (West 1970), it is a ground for judicial vacation of an arbitration award that the arbitrators exceeded their powers. *Daniel Construction Co. v. International Union of Operating Engineers, Local 513,* 570 F.Supp. 299, 302 (E.D.Mo.1983); *Western Waterproofing Co. v. Lindenwood Colleges,* 662 S.W.2d 288, 291 (Mo.App. 1983); § 435.405.1(3), RSMo Supp.1984. The award is not, however, based upon the excessive sulfur dioxide emissions resulting from burning the coal, as contended by the Mining Company. The award is based upon excessive sulfur content of the coal. The contract allowed a maximum sulfur content of 3.5 percent. The arbitrator found as a fact that in the 18 months after mid-1977 and before the Power Company refused to accept any more Randolph and Howard Counties coal, the average sulfur content exceeded 4 percent in 12 months, and exceeded 4.5 percent in five of those months, reaching a high of 4.91 percent. These findings are not challenged by the Mining Company. The arbitrator's award mentions excessive sulfur dioxide emissions as resulting from excessive sulfur content, and as furnishing a reason for the Power Company to attach importance to the excessive sulfur content. Governmental regulation of sulfur dioxide emissions first came into effect on March 11, 1978. The arbitrator noted that the excessive sulfur content would necessarily produce excessive sulfur dioxide emissions, although there was actually no direct proof of unlawful sulfur dioxide emissions. Missouri Mining treats the arbitrator's decision as one based upon economic hardship imposed upon the Power Company by the contract, a ground which by express terms of the contract was not subject to arbitration. However, we think it is clear from the express terms of the arbitrator's findings that the decision was based upon the excessive sulfur content of the coal and not upon excessive sulfur dioxide emissions.

## III

The Mining Company charges next that the court erred in denying to it an evidentiary hearing on the question whether the arbitrator had based his decision upon the excessive sulfur dioxide emissions, a matter of said contract.

What is it that Missouri Mining wishes to prove in an evidentiary hearing upon the motions to vacate or to confirm? In its brief it says:

An evidentiary hearing is required in order to give Missouri Mining a full and fair opportunity to show the scope and nature of the sulfur dioxide presentation made to the arbitrator, which presentation ultimately became a non-arbitral basis for the arbitrator's decision.

There seems to be no dispute between the parties that the subject of sulfur dioxide emissions was somewhat extensively gone into in the arbitration hearing. The Mining Company in an evidentiary hearing would prove a fact about which there is no dispute. Proof of that fact would not in any way affect the validity of the arbitrator's decision, which by its express terms was based upon the presence of excessive sulfur content. It is interest-

ing to note that Missouri Mining does not here dispute the presence in the coal of excessive sulfur levels, or that such levels were in violation of the contract. The arbitrator's decision by its express terms is based upon the fact of excessive sulfur content. We conclude, as did the trial court, that there was no genuine issue of material fact upon which any evidentiary hearing was required upon a motion to confirm or to vacate the arbitrator's award. *Andros Compania Maritima v. Marc Rich & Co.*, A.G., 579 F.2d 691, 704 (2d Cir.1978).

Judgment affirmed.

All concur.